UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------- X
BRAD G. HENDRICK, CHRISTOPHER AMALFITANO, ERIN K. AMALFITANO, RICHARD M. ROCCA, and ROGER RESTAINO,

*Plaintiffs*,

**26-cv-7956**

- against -

**CLASS ACTION COMPLAINT**

NEW YORK CITY,

*Defendant*.
---------------------------------------------------------------------------- X

Plaintiffs, Brad Hendrick, Christopher Amalfitano, Erin K. Amalfitano, Richard Rocca, and Roger Restaino, individually and on behalf of all others similarly situated, by and through their attorneys the Law Office of Mirel Fisch, allege the following:

## INTRODUCTORY STATEMENT

1. Plaintiffs bring this action to challenge 38 RCNY § 5-25(g)(3)(a), New York City's unconstitutional Rule that expressly prohibits holders of "Non NYS Resident" New York City Concealed Carry Handgun Licenses ("Non-Resident Carry License") from registering more than a single handgun to their licenses. Plaintiffs' challenge rests upon two independent constitutional theories.

2. First, the Second Amendment protects the right of the people to keep and bear "Arms," in the plural, and the City's Rule infringes that right by limiting Plaintiffs, and a class of similarly situated non-residents, to a single registered handgun.

3. Second, and independently, the Rule discriminates against these non-resident licensees in violation of the Privileges and Immunities Clause of Article IV and the Equal Protection Clause of the Fourteenth Amendment. While the City permits New

York State residents who were issued Carry and Special Carry licenses to register two handguns as a matter of right and any number of additional handguns as a matter of course upon a routine showing of safe storage, it categorically prohibits Plaintiffs and a class of similarly situated non-residents who have been issued Non-Resident Carry Licenses from registering even a second handgun, solely because they reside outside New York State and have been issued Non-Resident Carry Licenses.

4. New York City already licensed each Plaintiff and permits each of them to carry a handgun in the City for self-defense. It nonetheless limits each of them to a single registered handgun and, by the express terms of its own Rule, provides that a Non-Resident Carry licensee's "requests to add more than one (1) handgun to a license *shall not* be approved." (emphasis added). The distinction rests upon out-of-state residence and the City's classification of Plaintiffs as Non-Resident Carry licensees, not upon any consideration related to firearms, safe storage, or the licensee's qualifications to carry. It serves no public-safety purpose, is untethered to any legitimate objective, and both infringes upon non-resident licensees' Second Amendment right to keep and bear "Arms" and burdens citizens of other States in the exercise of that fundamental right.

5. The City has applied that restriction even to an out-of-state resident who works within New York City. To the extent the City interprets its licensing scheme to classify out-of-state residents who are principally employed within New York City as Non-Resident Carry licensees, Plaintiffs challenge the Non-Resident Cap as applied to those individuals as well.

6. Plaintiffs therefore bring this action seeking declaratory and injunctive relief prohibiting enforcement of the Non-Resident Cap, together with nominal damages and such other relief as the Court deems appropriate.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Second and Fourteenth Amendments to the United States Constitution, and Article IV, § 2 of the United States Constitution.

8. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

10. Plaintiff Brad Hendrick ("Mr. Hendrick") is a resident of Hudson County, State of New Jersey, and holds a New York City Non-Resident Carry License.

11. Plaintiff Christopher Amalfitano ("Dr. Amalfitano") is a resident of Somerset County, State of New Jersey, and holds a New York City Non-Resident Carry License.

12. Plaintiff Erin K. Amalfitano ("Ms. Amalfitano") is a resident of Somerset County, State of New Jersey, and holds a New York City Non-Resident Carry License.

13. Plaintiff Richard Rocca ("Mr. Rocca") is a resident of Northampton County, Commonwealth of Pennsylvania, and holds a New York City Non-Resident Carry License.

14. Plaintiff Roger Restaino ("Mr. Restaino") is a resident of Fairfield County, State of Connecticut, and holds a New York City Non-Resident Carry License.

15. Defendant New York City ("New York City" or the "City") is a duly constituted municipality in the State of New York, existing by reason of, and pursuant to, the law of the State of New York. The New York City Police Department ("NYPD"), which is an administrative arm of New York City, and its License Division (the "License Division"), are headquartered in New York County, State of New York. Pursuant to authority vested in the Police Commissioner by the New York City Charter, the NYPD promulgates and, through its License Division, implements and enforces Title 38, Chapter 5 of the Rules of the City of New York (the "Rules" or "RCNY"), including the Rule challenged herein.

## FACTUAL ALLEGATIONS

### THE SECOND AMENDMENT PROTECTS THE RIGHT TO KEEP AND BEAR ARMS FOR SELF-DEFENSE, INCLUDING BY NON-RESIDENTS

16. The Second Amendment to the United States Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

17. In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 8 (2022), the Supreme Court held that the Second Amendment protects the right of ordinary, law-abiding citizens to carry a handgun in public for self-defense.

18. The Supreme Court further held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.*

19. The Second Amendment protects the right of "the people" to keep and bear "Arms." Plaintiffs, as ordinary, law-abiding citizens, are among "the people" whose

rights the Second Amendment protects. Nothing in the Amendment's text draws a distinction based upon State residency or excludes non-residents from its protection.

20. The plain text of the Second Amendment protects the right to keep and bear "Arms," in the *plural*, rather than limiting an individual to a single firearm. The constitutional guarantee therefore encompasses the keeping and bearing of more than one arm and is not satisfied merely because an individual is permitted to keep or bear a single handgun.

21. Each Plaintiff currently has one handgun registered to his or her New York City Non-Resident Carry License and seeks to register one or more additional handguns to that license.

22. The additional handguns that Plaintiffs own and seek to register to their New York City Non-Resident Carry Licenses are bearable "Arms" in common use today by law-abiding citizens for lawful purposes, including self-defense.

23. Accordingly, Plaintiffs' proposed conduct—keeping and bearing more than one handgun by registering additional handguns and choosing among those handguns for lawful carry and self-defense—falls within the Second Amendment's plain text. Plaintiffs do not seek to carry more than one handgun at a time; they seek to have more than one lawfully registered handgun available and to choose which registered handgun to bear for self-defense on a particular occasion.

24. Because the conduct in which Plaintiffs seek to engage falls within the Second Amendment's plain text, the Constitution presumptively protects that conduct, and the burden falls upon the City to demonstrate that its restriction is consistent with this Nation's historical tradition of firearm regulation.

25. There is no historical tradition in this Nation of limiting law-abiding individuals to a single handgun that they may lawfully keep and bear, nor is there any historical tradition of imposing such a numerical limitation based upon an individual's State of residence. To the extent historical regulations restricted the carrying of arms, they regulated matters such as where or under what circumstances arms could be carried—not the number of arms a law-abiding individual could keep and make available for lawful use.

**NEW YORK CITY'S HANDGUN LICENSING SCHEME**

26. In the State of New York, ordinary citizens must possess a valid firearms license to lawfully possess or carry a handgun.

27. A New York State carry license issued outside New York City generally authorizes the licensee to carry a handgun throughout the State, but it does not, standing alone, authorize the licensee to carry within New York City.

28. Therefore, to lawfully carry a handgun within New York City—and thereby exercise the right to bear arms within the City—an individual must possess a valid carry license issued by the City.

29. New York law requires a handgun license to identify the particular handgun covered by the license, including its make, model, caliber, and serial number. *See* N.Y. Penal Law § 400.00(7). Accordingly, even where an individual may lawfully own and possess a particular handgun outside New York City, that individual cannot lawfully carry that particular handgun within the City unless it is registered to and covered by the license authorizing the individual to carry there. Carrying a handgun that is not covered by the requisite license subjects the licensee to criminal liability.

30. The City codified its handgun licensing rules in Title 38, Chapter 5 of the Rules of the City of New York (the "Rules" or "RCNY").

31. The City, through the NYPD's License Division, administers its firearms-licensing scheme, including by issuing handgun licenses and approving and registering handguns to those licenses.

32. The City—through its License Division—issues several types of concealed carry licenses, including:

a. Concealed Carry Handgun Licenses (license types beginning in "CB"). These licenses are issued pursuant to 38 RCNY § 5-03(a), which incorporates the requirements of 38 RCNY § 5-02, including § 5-02(g)'s requirement that an applicant "[r]eside or maintain a principal place of business within the confines of New York City."

b. Special Carry Handgun Licenses (license types beginning in "SC"). These licenses are issued to New York State residents who reside outside New York City and who already possess a valid New York State carry license issued by another New York State county.

c. New York City Non-Resident Carry License (license types beginning in "NC"). These licenses are issued pursuant to 38 RCNY § 5-03(b). That provision states that "[a] person who resides outside of New York State and is not principally employed within New York City" may apply for a carry handgun license pursuant to that subdivision and exempts such applicants from § 5-02(g)'s residence-or-principal-place-of-business requirement.

33. Regardless of the type of carry license issued, the license alone does not authorize the licensee to carry any handgun of his or her choosing. Rather, each handgun that a licensee wishes to possess or carry within New York City must be individually registered to and expressly identified on that New York City license.

34. The number of handguns that may be registered to a license is governed by 38 RCNY § 5-25, entitled "Handgun Acquisition Requirements."

35. 38 RCNY § 5-25 provides, in relevant part, as follows:

> In addition to any applicable federal or state requirements, the following procedures apply to all licensees seeking to acquire and register a handgun to one or more of their licenses.
>
> . . .
>
> (g) *Number of handguns allowed on a handgun license.* The number of handguns allowed under each type of handgun license is listed below:
>
> (1) *Premises* Residence – One handgun, except that additional handguns will be approved upon request after the licensee shows evidence of appropriate safeguarding and establishes compliance with the mandatory waiting periods pursuant to subdivision (b) of § 10-302.1 of the Administrative Code and § 400.20 of the Penal Law.
>
> . . .
>
> (3) *Carry and Special Carry* – Two handguns, provided that requests for additional handguns shall be evaluated in accordance with the standards set forth for a premise residence license in paragraph (1) of this subdivision. Carry and Special Carry licensees may only carry one (1) handgun at a time. Additional handguns must remain safeguarded.

> a. For Non-Resident Carry licenses issued pursuant to 38 RCNY § 5-03(b), requests to add more than one (1) handgun to a license ***shall not*** be approved.

38 RCNY § 5-25 (emphasis added). Subsection (g)(3)(a), which prohibits Non-Resident Carry licensees—and only Non-Resident Carry licensees—from registering more than one handgun to their licenses, is hereinafter referred to as the "Non-Resident Cap."

36. When a licensee requests to add a handgun to an existing license, the License Division reviews the request approximately four weeks after it is submitted. If all required documents have been submitted and the handgun is New York City compliant, the License Division approves the submission and sends the licensee an email advising of the approval. The email further states: "Your license, and purchase authorization if applicable,[1] will be mailed to your address of record via USPS. **Please allow 10 business days for receipt**." (emphasis added). Accordingly, substituting one handgun for another is not an immediate process; a licensee must wait up to an additional ten business days for the updated license to be received by mail. Until the licensee receives a physical copy of the updated license identifying the replacement handgun, the licensee cannot lawfully carry that handgun in New York City.

## THE NON-RESIDENT CAP TREATS NON-RESIDENT LICENSEES DIFFERENTLY FROM OTHER CARRY LICENSEES

37. Under § 5-25, Carry and Special Carry licensees are permitted to register two handguns as a matter of right and may register additional handguns upon a showing of "evidence of appropriate safeguarding." There is no numerical ceiling upon the number of handguns that these licensees may register. In practice, the License Division

[1] Purchase Authorizations only apply to New York City residents.

approves Carry and Special Carry licensees to register numerous additional handguns, including ten, twenty, or even thirty or more, upon the required showing of safe storage.

38. The "mandatory waiting periods" referenced alongside that safe-storage requirement likewise impose no numerical limit and do not meaningfully constrain a resident's ability to register multiple handguns at the same time. The 90-day waiting period imposed by New York City Administrative Code § 10-302.1(a) is a waiting period between handgun *purchases*, and it governs only the *acquisition* of a newly purchased handgun. It does not apply to the registration of handguns that a licensee already owns. Accordingly, a Special Carry licensee who already owns multiple handguns may register all of them, whether a dozen or thirty, on the same day, subject only to a showing of safe storage.

39. Non-Resident Carry licensees, however, are treated differently.

40. Non-Resident Carry licensees are categorically limited to registering a single handgun. This limitation applies regardless of the number of handguns they lawfully own or whether they can satisfy the same safe-storage requirements applicable to Carry and Special Carry licensees. By the express terms of the Non-Resident Cap, their "requests to add more than one (1) handgun to a license <u>shall not</u> be approved." (emphasis added). No showing of safe storage, or any other showing, permits a Non-Resident Carry licensee to register a second handgun. The Non-Resident Cap therefore limits these licensees to exactly one registered handgun and categorically forecloses the registration of a second.

41. The distinction appears on the face of the Rule itself. Section 5-25(g)(3)(a) expressly singles out "Non-Resident Carry licenses issued pursuant to 38 RCNY § 5-

03(b)" and, as to those licenses alone, prohibits those licensees from registering more than one handgun.

42. The Rule imposes its one-handgun limitation upon citizens of other States who hold a New York City Non-Resident Carry License, while allowing New York State residents who hold Carry or Special Carry licenses to register multiple handguns. The resulting classification treats individuals who reside outside New York State differently from New York State residents.

43. As a result, a Non-Resident Carry licensee may lawfully carry within New York City only the single handgun registered to his or her license, even if the licensee lawfully owns other handguns outside the City. If that single registered handgun becomes temporarily unavailable—including because it requires repair or servicing or becomes inoperable—the licensee has no other handgun that he or she may lawfully carry in New York City.

**THE NON-RESIDENT CAP LACKS ANY JUSTIFICATION RELATED TO PUBLIC SAFETY OR THE CITY'S LICENSING INTERESTS**

44. The safe-storage requirements applicable to Carry and Special Carry licensees cannot justify the Non-Resident Cap. Carry and Special Carry licensees may register additional handguns upon demonstrating appropriate safeguarding, but Non-Resident Carry licensees are categorically prohibited from registering a second handgun regardless of whether they can satisfy the same safe-storage requirements. The City does not permit Non-Resident Carry licensees to obtain a second handgun on the same showing of safe storage that permits Carry and Special Carry licensees to register additional handguns.

45. Nor does the Non-Resident Cap limit the number of handguns that a licensee may carry at any given time. Section 5-25 separately provides that all Carry and Special Carry licensees "may only carry one (1) handgun at a time," while requiring any additional registered handguns to remain safeguarded. Thus, allowing a Non-Resident Carry licensee to register additional handguns would not permit that licensee to carry any more handguns at one time than he or she is already permitted to carry.

46. Nor can the Non-Resident Cap be explained by any difference in the City's vetting of its licensees. Before receiving a Non-Resident Carry license, a non-resident must apply to the License Division, satisfy the City's licensing requirements, and be approved by the City to carry a handgun within New York City. Accordingly, the individuals subject to the Non-Resident Cap have already undergone the City's licensing process and have already been determined eligible to carry a handgun within the City.

47. To the extent New York State has historically asserted a justification for distinguishing between residents and non-residents in the administration of its handgun licensing laws, that justification concerns the licensing process itself—not the number of handguns that may be registered to an already-issued license. Specifically, New York State (not New York City) has asserted an interest in preventing "forum shopping" among licensing officers and ensuring that license applications are investigated by officials familiar with the applicant and his or her community. Whatever relevance those considerations may have to where an individual applies for a license, they do not explain why an individual whom the City has already investigated and licensed to carry a handgun may register multiple handguns if he resides in New York State, but only one if he does not reside in New York State and holds a Non-Resident Carry License.

48. The distinction between New York State residents who hold Carry or Special Carry licenses and out-of-state residents who hold Non-Resident Carry licenses likewise bears no relation to the considerations relevant to the registration of additional handguns. Whether a licensee resides inside or outside New York State does not affect that individual's ability to safely store additional handguns, the number of handguns that may be carried at one time, or the extent to which the individual has already been vetted and approved by the License Division. Nor does residing outside New York State create any different risk or concern associated with the registration of additional handguns.

49. The Non-Resident Carry licensees subject to the Non-Resident Cap do not present any circumstance or risk with respect to the registration of additional handguns that distinguishes them from Carry or Special Carry licensees. Like those licensees, they have been investigated and approved by the License Division to carry a handgun in New York City; they remain subject to the same prohibition against carrying more than one handgun at a time; and they can safeguard additional handguns in the same manner as other carry licensees.

50. Accordingly, permitting Carry and Special Carry licensees to register and rotate among multiple lawfully owned handguns while limiting Non-Resident Carry licensees to a single handgun does not advance any interest in safe storage, public safety, or ensuring that only qualified individuals carry handguns within New York City. The difference in treatment rests solely upon the licensee's out-of-state residence and resulting classification as a Non-Resident Carry licensee, rather than upon any consideration relevant to the registration, possession, or safe storage of additional handguns.

51. Indeed, the City has never articulated any public-safety, licensing, or other governmental interest served by limiting Non-Resident Carry licensees—and only Non-Resident Carry licensees—to a single registered handgun, or by permitting other carry licensees, but not Non-Resident Carry licensees, to register multiple handguns.

52. The City likewise identified no such justification when it promulgated the current version of § 5-25. The Rule was first adopted by emergency rule, published in *The City Record* on August 12, 2024, and the current version was thereafter adopted in December 2024. In promulgating the Rule, the City identified its purposes as *eliminating* the License Division's discretion to *reduce* the number of handguns listed on a carry license, establishing a procedure for licensees seeking to register more than two handguns, and to "clarify" the procedures applicable to licensees seeking to acquire and register handguns.

53. None of those stated purposes explain or support the one-handgun *limitation* imposed upon Non-Resident Carry licensees. The City identified no public-safety, licensing, or other governmental interest served by retaining—as to Non-Resident Carry licensees alone—an absolute one-handgun cap.

## THE NON-RESIDENT CAP IS AN OFFICIAL POLICY OF THE CITY

54. The Non-Resident Cap is a formally adopted municipal rule, promulgated by the NYPD pursuant to rulemaking authority vested in the Police Commissioner, and codified at 38 RCNY § 5-25(g)(3)(a). The Non-Resident Cap therefore constitutes an express, officially promulgated policy of the City.

55. The City, through the NYPD and its License Division, implements and enforces the Non-Resident Cap as written by prohibiting Non-Resident Carry licensees from registering more than one handgun to their licenses.

56. The Non-Resident Cap is the direct and moving force behind the constitutional deprivations alleged herein.

## THE NON-RESIDENT CAP INJURES PLAINTIFFS

### BRAD G. HENDRICK

57. Plaintiff Brad Hendrick is a resident of Hudson County, New Jersey, and has lived in New Jersey since 2008. He works in Manhattan as a Managing Director and commercial insurance broker. Mr. Hendrick is a graduate of the Massachusetts Maritime Academy and served for eight years in the United States Coast Guard Reserve, including in a federal law-enforcement capacity. He is also a certified Range Safety Officer.

58. Mr. Hendrick owns approximately twenty-five handguns and holds a New York City Non-Resident Carry License, as well as concealed-carry licenses from twelve other States. In New Jersey, Mr. Hendrick may lawfully carry any handgun that he lawfully owns, and his other carry licenses likewise do not limit him to a single designated handgun.

59. Mr. Hendrick applied for a New York City Non-Resident Carry License on August 30, 2024. As part of his application, he requested to register two handguns: his Glock 43X, a versatile handgun suitable for regular carry, and his Smith & Wesson .357 snub-nose revolver, a smaller handgun that he can more easily conceal beneath lighter clothing or business attire. Mr. Hendrick submitted the required photographs and documents for both handguns.

60. On January 23, 2025, Mr. Hendrick's investigator called him and advised him that, as a non-New York State resident, he could register only one handgun to his license. The investigator therefore rejected his request to register both handguns and instructed him to select one of the two. The investigator followed the call with an email confirming the License Division's position: "Please note: You are only allowed one firearm." *See* Ex. 1 (Email from NYPD Inv. Jacqueline Ho-sang, dated Jan. 23, 2025).

61. Although Mr. Hendrick works in Manhattan, the License Division issued him a Non-Resident Carry License and subjected him to the Non-Resident Cap. Accordingly, to the extent the City interprets or applies its licensing rules to classify out-of-state residents who are principally employed within New York City as Non-Resident Carry licensees and subjects them to the Non-Resident Cap, Plaintiffs challenge the Non-Resident Cap as applied to those individuals as well.

62. In accordance with the investigator's direction, Mr. Hendrick selected his Glock 43X as the single handgun to be registered to his license. The License Division approved his application and issued his license the following day, January 24, 2025, listing the Glock 43X as the sole handgun on the license. *See* Ex. 2 (Hendrick Non-Resident Carry License). Mr. Hendrick received the license approximately one week later.

63. Before receiving his New York City license, Mr. Hendrick specifically objected to the one-handgun limitation applicable to Non-Resident Carry licensees. On November 25, 2024, he spoke at the City's virtual public hearing concerning the proposed rules governing Non-Resident Carry licenses and specifically addressed the proposed limitation of those licensees to a single handgun. Mr. Hendrick also submitted

comments concerning the one-handgun limitation through the City's public-comment forum that same day, stating: "Should one's self defense firearm need repair or maintenance it would leave the permit holder with no firearm for CCW. The license cannot be limited to one handgun." *See* Ex. 3 at 23-24 (Public Comments on Proposed Firearm Licensing Amendments) ("BGH"); *see also id.* at 29 ("Brad H."). Therefore, before the License Division rejected Mr. Hendrick's request to register two handguns, the City had already received his objection to the very restriction that it later applied to him.

64. Since receiving his New York City license, Mr. Hendrick has carried a handgun in New York City approximately ten times each month. The one-handgun restriction therefore affects his ability to choose which handgun to carry on a regular and recurring basis.

65. Mr. Hendrick wants to register additional handguns to his New York City license because different handguns are better suited to different circumstances. Although he carries his Glock 43X approximately seventy-five percent of the time, during the summer or when dressed in business attire he often carries a Smith & Wesson .357 snub-nose revolver because its smaller size makes it easier to conceal. In other circumstances, he prefers a larger-frame handgun with greater capacity. Mr. Hendrick therefore wants the ability to choose among his lawfully owned handguns when carrying in New York City based on his clothing, activities, destination, and other circumstances.

66. Having more than one handgun registered to his New York City license would also allow Mr. Hendrick to continue carrying for self-defense when his registered handgun requires repair or servicing. Over the years, handguns that Mr. Hendrick regularly carried for self-defense have required repair or servicing, and he was able to

switch immediately to another handgun while they were unavailable. If his registered Glock 43X requires repair or servicing, the Non-Resident Cap prevents him from doing the same in New York City because he cannot register another handgun to his license.

67. Mr. Hendrick has already requested to register more than one handgun to his New York City license, and the License Division rejected that request because he is a Non-Resident Carry licensee. Mr. Hendrick continues to want to register at least one additional handgun to his license and intends to carry different registered handguns for self-defense based on his clothing, activities, destination, and other circumstances. The Non-Resident Cap prevents him from doing so.

68. Simply changing the handgun registered to his license each time he wants or needs to carry a different one—or when his registered handgun requires repair or servicing—is not a practical alternative for Mr. Hendrick. Doing so would require him to submit a request to the License Division to substitute the handgun on his license, wait for the Division to process that request, and then wait to receive an updated license identifying the replacement handgun before he could lawfully carry it in New York City. That process does not allow Mr. Hendrick to choose among his handguns as his clothing, activities, destination, or other circumstances change, nor does it allow him to immediately switch to another handgun when his registered handgun becomes temporarily unavailable.

**CHRISTOPHER AMALFITANO**

69. Plaintiff Christopher Amalfitano is a resident of Somerset County, New Jersey, where he resides with his wife, Plaintiff Erin Amalfitano. He is a board-certified emergency medicine physician who has practiced emergency medicine since 1997. Over

the course of his career, he has held numerous medical leadership positions, including serving for more than seven years as Chair of the Emergency Department at Overlook Medical Center and serving on the Atlantic Health System Board of Trustees.

70. Dr. Amalfitano has substantial firearms training and extensive experience as a licensed firearms owner. He owns seven handguns and holds carry licenses from Utah, Florida, South Carolina, New Hampshire, Massachusetts, Connecticut, Maine, Maryland, New Jersey, Pennsylvania, Rhode Island, Arizona, and New York City. Of those licenses, only his New York City Non-Resident Carry License limits him to carrying a single registered handgun.

71. Dr. Amalfitano carries a handgun in New York City for self-defense approximately once each month. He applied for a New York City Non-Resident Carry License on February 20, 2025. The License Division approved his application on March 27, 2026, and issued his license on March 30, 2026, listing his Glock 26 as the sole handgun on the license. *See* Ex. 4 (C. Amalfitano Non-Resident Carry License). Dr. Amalfitano received the license on April 4, 2026.

72. Dr. Amalfitano wants to register additional handguns to his New York City license because different handguns suit different circumstances. When he wears a suit or other clothing that requires a tucked-in shirt, he carries a subcompact Glock 43, which he can conceal beneath his suit jacket. During the summer, he routinely carries his compact Glock 26, which he can conceal beneath an untucked shirt. During the fall and winter, he prefers his mid-sized Walther PPQ, which he considers his most accurate handgun and can readily conceal beneath heavier clothing. Dr. Amalfitano generally finds that larger handguns provide greater accuracy but are more difficult to conceal. He

therefore wants to choose among his lawfully owned handguns based on his clothing, the season, and other circumstances.

73. Having more than one handgun registered to his New York City license would also allow Dr. Amalfitano to continue carrying for self-defense when one handgun requires repair or servicing. For example, Dr. Amalfitano previously sent the Glock 26 now registered to his New York City license to Tennessee for machining, leaving him without that handgun for approximately two weeks. On another occasion, the Glock 26 required a trigger repair that took approximately two weeks. Dr. Amalfitano also sent his Walther PPQ to Virginia for machining, which left him without that handgun for approximately one month. If his Glock 26 similarly requires repair or servicing now, the Non-Resident Cap prevents him from carrying another handgun that he lawfully owns because he cannot register a second handgun to his New York City license.

74. Given the above concerns, on April 16, 2026, Dr. Amalfitano submitted a request to the License Division to add his Walther PPQ to his New York City Non-Resident Carry License. However, twenty-seven days later, on May 13, 2026, the License Division rejected his request, stating as follows:

> Dear Amalfitano, Christopher ,
>
> We regret to inform you that your request to add a WAL - WALTHER (GE & US) PPQM2 FAQ6612 has been **disapproved** because:
>
> - You are a Non-Resident Concealed Carry (NC) Licensee who attempted to register more than one (1) firearm in violation of R.C.N.Y. Title 38 § 5-25(g)(3)(a).

*See* Ex. 5 (Add Firearm request disapproval, dated May 13, 2026).

75. As a result of the License Division's denial, Dr. Amalfitano does not have a substitute handgun that he may lawfully carry in New York City if his registered Glock

26 becomes unavailable for repair or servicing, or if he wants to carry a different handgun because of his clothing, the season, or other circumstances.

76. Simply changing the handgun registered to his license each time he wants or needs to carry a different one—or when his registered handgun requires repair or servicing—is not a practical alternative. Based on his experience with the License Division, including the twenty-seven days it took the Division to act on his request to add a second handgun, Dr. Amalfitano expects the Division would take approximately one month to process a request to substitute another handgun, followed by approximately ten business days for him to receive the updated license. During that time, he could not lawfully carry the replacement handgun in New York City. The substitution process therefore does not provide Dr. Amalfitano with a practical means of choosing among his handguns as circumstances change or of carrying another handgun when his registered handgun becomes temporarily unavailable.

**ERIN K. AMALFITANO**

77. Plaintiff Erin Amalfitano is a resident of Somerset County, New Jersey, where she resides with her husband, Plaintiff Christopher Amalfitano. She works as an emergency-medicine nurse practitioner in Essex, Union, and Somerset Counties, where she routinely makes critical medical decisions in a high-stress, high-stakes environment.

78. Ms. Amalfitano owns three handguns and holds carry licenses from New Jersey, Rhode Island, Connecticut, Florida, Maryland, Pennsylvania, New Hampshire, and New York City. Except for her New York City Non-Resident Carry License, her carry licenses permit her to carry each of the three handguns she owns.

79. Ms. Amalfitano carries a handgun in New York City for self-defense approximately once each month. She applied for a New York City Non-Resident Carry License on February 20, 2025. The License Division approved her application on March 27, 2026, and issued her license on March 30, 2026, listing her Sig Sauer P365 as the sole handgun on the license. *See* Ex. 6 (E. Amalfitano Non-Resident Carry License). Ms. Amalfitano received the license on April 4, 2026.

80. Ms. Amalfitano wants to register an additional handgun to her New York City license because different handguns suit different circumstances. During the summer, she carries her compact Sig Sauer P365 because she can easily conceal it beneath lighter clothing. During the fall and winter, she prefers her mid-sized Walther PPQ, which she finds more accurate and can readily conceal beneath heavier clothing. Ms. Amalfitano generally finds that larger handguns provide greater accuracy but are more difficult to conceal. She therefore wants to choose among her lawfully owned handguns based on her clothing, the season, and the circumstances.

81. Having more than one handgun registered to her New York City license would also allow Ms. Amalfitano to continue carrying for self-defense when one handgun requires repair or servicing. Ms. Amalfitano previously sent both her Walther PPQ and Sig Sauer P365 to Virginia for machining, leaving her without those handguns for approximately one month each. If her Sig Sauer P365 requires similar repair or servicing in the future, Ms. Amalfitano wants to be able to carry another handgun that she lawfully owns while the Sig Sauer P365 is unavailable.

82. Given the above concerns, in or about May 14, 2026, Ms. Amalfitano submitted a request to the License Division to add her Walther PPQ to her New York

City Non-Resident Carry License. On June 8, 2026, the License Division rejected her request, stating as follows:

> Dear Amalfitano, Erin ,
>
> We regret to inform you that your request to add a WAL - WALTHER (GE & US) PPQM2 FDC0949 has been disapproved because:
>
> - You are a Non-Resident Concealed Carry (NC) Licensee who attempted to register more than one (1) firearm in violation of R.C.N.Y. Title 38 § 5-25(g)(3)(a).

*See* Ex. 7 (Add Firearm request disapproval, dated June 8, 2026).

83. As a result of the License Division's denial, Ms. Amalfitano does not have a substitute handgun that she may lawfully carry in New York City if her registered Sig Sauer P365 becomes unavailable for repair or servicing, or if she wants to carry a different handgun because of her clothing, the season, or other circumstances.

84. Simply changing the handgun registered to her license each time the need arises is not a practical solution. Based on her experience with the License Division, Ms. Amalfitano expects it would take approximately one month for the Division to add a different handgun to her license, followed by approximately ten business days for her to receive the updated license. During that time, she could not lawfully carry the replacement handgun in New York City. The substitution process therefore does not provide Ms. Amalfitano with a practical means of choosing among her handguns as circumstances change or of carrying another handgun when her registered handgun is temporarily unavailable.

**RICHARD M. ROCCA**

85. Plaintiff Richard Rocca is a resident of Northampton County, Pennsylvania, where he has lived for more than ten years. He maintains an office in the Bronx in connection with his management of real estate, apartments, and a garage and his work as a project manager, and he travels to that office a few times each month.

86. Mr. Rocca also served for more than two decades in the New York Air National Guard. He first enlisted on October 19, 1970, serving in electronics and earning an Associate Degree in Radio Communication Technology from the Community College of the Air Force before honorably resigning on October 18, 1984. After raising his son and seeing him through college, Mr. Rocca re-enlisted in the New York Air National Guard on October 29, 1999. He retired with full benefits on December 5, 2005, after more than two decades of service.

87. Mr. Rocca owns seven handguns and holds firearms licenses from Pennsylvania, New Jersey, Connecticut, Massachusetts, Maine, Florida, New Hampshire, Utah, Arizona, and New York City. Except for his New York City Non-Resident Carry License, none of those licenses limits the number of handguns that he may lawfully carry under the license.

88. Mr. Rocca regularly travels to New York City and carries a handgun there for self-defense. He applied for a New York City Non-Resident Carry License on December 9, 2025. The License Division approved his application on July 17, 2026, and issued his license that same day, listing his Glock 43 as the sole handgun on the license. *See* Ex. 8 (Rocca Non-Resident Carry License). Mr. Rocca received the license on July 23 or 24, 2026.

89. Mr. Rocca wants to register additional handguns to his New York City license because different handguns suit different circumstances. During warmer weather, he carries a Glock 43 because he can easily conceal it beneath lighter clothing. When the weather permits him to wear a sweater or jacket, he prefers a Glock 19 or Glock 27, which he considers to be more reliable, all-around handguns. Indeed, Mr. Rocca would generally prefer to carry the Glock 19 or Glock 27, but they are more difficult to conceal than the smaller Glock 43. He therefore wants to choose among his lawfully owned handguns based on his clothing, the weather, and the circumstances.

90. Having more than one handgun registered to his New York City license would also allow Mr. Rocca to continue carrying for self-defense when one handgun becomes unavailable or inoperable. Mr. Rocca previously had a handgun that required repair and remained unavailable to him for more than two months. Based on this experience, he wants another handgun registered to his New York City license so that he has another handgun available for lawful carry if his primary handgun requires repair or otherwise becomes unavailable.

91. Unlike Christopher and Erin Amalfitano, Mr. Rocca did not submit a request to the License Division to add a second handgun to his New York City license. Mr. Rocca reviewed the governing New York City rule and learned that 38 RCNY § 5-25(g)(3)(a) expressly provides that requests by Non-Resident Carry licensees "to add more than one (1) handgun to a license shall not be approved." Because the Rule categorically prohibited the License Division from approving the very request Mr. Rocca wanted to make, he did not submit a request to add a second handgun to his license because he understood that the request would be futile.

92. Mr. Rocca would register at least one additional handgun to his New York City license if the City permitted him to do so, and he intends to carry different registered handguns in New York City for self-defense based on his clothing, the weather, and other circumstances. But for the Non-Resident Cap, Mr. Rocca would have submitted a request to add another handgun to his license.

**ROGER RESTAINO**

93. Plaintiff Roger Restaino is a resident of Fairfield County, Connecticut, where he has lived for approximately thirty-seven years. Mr. Restaino served in the United States Coast Guard from 1974 through 1995, including twelve years as an enlisted member specializing in weapons and maritime law enforcement, and retired as a commissioned officer. He remains active in his community as a member of the American Legion and the Community Emergency Response Team. Mr. Restaino is also an active NRA and USCCA instructor, with instructor ratings that include Concealed Carry and the Legal Use of Force.

94. Mr. Restaino owns six handguns and holds carry licenses from Connecticut, Utah, Pennsylvania, and New York City. None of his Connecticut, Utah, or Pennsylvania licenses identifies or limits which of his handguns he may carry. Connecticut likewise does not limit the number of handguns that he may own or register.

95. Mr. Restaino applied for a New York City Non-Resident Carry License on February 28, 2025. The License Division approved his application on September 25, 2025, and issued his license on March 24, 2026, listing his Glock 43X as the sole handgun on the license. *See* Ex. 9 (Restaino Non-Resident Carry License). Mr. Restaino received the license on March 27, 2026.

96. Mr. Restaino wants to register additional handguns to his New York City license so that he can choose among his lawfully owned handguns based on his clothing, the season, and the circumstances. For example, during the summer months, he prefers a smaller .380 semi-automatic handgun because it is easier to conceal beneath lighter clothing. Because his New York City license is limited to a single handgun, however, Mr. Restaino selected his medium-sized Glock 43X as a compromise that would work reasonably well across different seasons and circumstances.

97. Since receiving his New York City license, Mr. Restaino also joined the Dutchess County Pistol Association, where he participates in firearms safety and training programs. His New York City license authorizes him to carry throughout New York State, but only the handgun registered to that license. Mr. Restaino would like the flexibility to carry different lawfully owned handguns to the Association for training. However, he cannot lawfully carry a different handgun with him unless that handgun is also registered to his New York City license. Although Mr. Restaino could separately apply to Dutchess County for a pistol permit that would allow him to carry multiple handguns elsewhere in New York State, doing so would require him to relinquish his New York City license and, with it, his authority to carry a handgun in New York City at all. Therefore, obtaining a license from Dutchess County is not an alternative that would permit him both to carry different handguns elsewhere in the State and to continue carrying in New York City.

98. On August 11, 2026, Mr. Restaino submitted a request to the License Division to add a Glock 19 to his New York City Non-Resident Carry License. On September 1, 2026, the License Division rejected his request, stating as follows:

> Dear Restaino, Roger ,
>
> We regret to inform you that your request to add a GLC - GLOCK GMBH (AU & US) 19 Gen 6 CHXM318 has been **disapproved** because:
>
> - You are a Non-Resident Concealed Carry (NC) Licensee who attempted to register more than one (1) firearm in violation of R.C.N.Y. Title 38 § 5-25(g)(3)(a).

*See* Ex. 10 (Add Firearm request disapproval, dated Sept. 1, 2026).

99. As a result of the License Division's denial, Mr. Restaino has no substitute handgun that he may lawfully carry in New York City if his registered Glock 43X becomes unavailable or if he wants to carry a different handgun because of his clothing, the season, or other circumstances. This restriction differs from his other carry licenses, under which he may carry another lawfully owned handgun if his usual handgun becomes unavailable. Although Mr. Restaino owns five other handguns, the Non-Resident Cap therefore limits him to his Glock 43X whenever he carries a handgun in New York City.

100. Simply changing the handgun registered to his New York City license each time he wants or needs to carry a different one is not a practical alternative for Mr. Restaino. Doing so would require him to submit a new request to the License Division, wait for the Division to process the substitution, and then wait for the License Division to mail him a new license identifying the replacement handgun. Repeating that process each time his clothing, the season, or other circumstances make a different handgun preferable—or whenever his registered Glock 43X becomes temporarily unavailable—would not provide a workable means of changing handguns as those circumstances arise. Mr. Restaino therefore wants to register more than one handgun to his license so that he can choose among his lawfully owned handguns for lawful carry, training, and other lawful purposes as his needs and circumstances change.

**PLAINTIFFS' COMMON AND CONTINUING INJURIES**

101. The consequences of the Non-Resident Cap when a registered handgun becomes unavailable are neither hypothetical nor remote. Mr. Hendrick has previously had handguns that he regularly carried for self-defense require repair or servicing and, outside New York City, was able to switch immediately to another handgun while they were unavailable. Dr. Amalfitano has experienced periods of approximately two weeks to one month during which handguns he regularly carried were unavailable because of repair or machining; Ms. Amalfitano has experienced similar periods of approximately one month; and Mr. Rocca previously had a handgun remain unavailable for more than two months while it required repair. If such an interruption occurs with the single handgun registered to a Plaintiff's Non-Resident Carry License, the Non-Resident Cap leaves that Plaintiff without any handgun that he or she may lawfully carry in New York City for the duration.

102. Nor does the ability to substitute one handgun for another provide an immediate alternative. As alleged above, the License Division reviews handgun submissions approximately four weeks after submission and, after approval, instructs licensees to allow an additional ten business days to receive the updated license by mail. During that period, the replacement handgun cannot lawfully be carried in New York City. A New York State resident who holds a Carry or Special Carry license, by contrast, may already have multiple handguns registered to the license and may simply choose another registered handgun to carry when one becomes unavailable. The Non-Resident Cap categorically denies Non-Resident Carry licensees that alternative.

103. Each Plaintiff is a law-abiding and responsible citizen of the United States and of a State other than New York, and none is subject to any disability that would disqualify him or her from possessing a firearm. Indeed, each Plaintiff has already been vetted and approved by New York City to carry a concealed handgun within the City.

104. Each Plaintiff is presently and continuously injured by the Non-Resident Cap. Each Plaintiff owns and wants to register at least one additional handgun and, but for the Non-Resident Cap, would have at least one additional handgun registered to his or her license. However, the Non-Resident Cap prohibits each from doing so. The Rule expressly provides that requests by Non-Resident Carry licensees "to add more than one (1) handgun to a license shall not be approved." Accordingly, Plaintiffs who have submitted requests to add a second handgun have been denied, and requiring any Plaintiff to submit or resubmit such a request as a prerequisite to relief would be futile. Plaintiffs' injuries are therefore neither speculative nor contingent upon any further application to the License Division.

## CLASS ACTION ALLEGATIONS

105. Plaintiffs bring this action on their own behalf, and, pursuant to Rules 23(a), and Rule 23(b)(2), of the Federal Rules of Civil Procedure, on behalf of a class that is defined as follows:

106. All persons who reside outside the State of New York and who hold a New York City Non-Resident Carry License subject to 38 RCNY § 5-25(g)(3)(a).

107. Numerosity. The class is so numerous that joinder of all members is impracticable. Upon information and belief, the License Division has issued Non-Resident Carry Licenses to numerous individuals residing throughout the United States,

each of whom is subject to the Non-Resident Cap. The precise number of class members can be determined from records maintained by the License Division.

108. Commonality. There are questions of law common to the class, the answers to which will resolve the claims of every member in one stroke, including whether the Non-Resident Cap violates the Second Amendment, the Privileges and Immunities Clause of Article IV, and the Equal Protection Clause of the Fourteenth Amendment. Because Plaintiffs challenge the Non-Resident Cap on its face, its constitutionality presents a common question that does not vary from one class member to the next.

109. Typicality. Plaintiffs' claims are typical of the claims of the class. Plaintiffs, like every class member, hold New York City Non-Resident Carry Licenses and are subject to the same Non-Resident Cap, which limits each of them to registering a single handgun. Plaintiffs' claims therefore arise from the same challenged Rule and are based upon the same legal theories as the claims of the class.

110. Adequacy. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs' interests are coextensive with, and are not antagonistic to, the interests of the class. Plaintiffs have retained counsel experienced in constitutional and civil-rights litigation, including litigation involving the Second Amendment and New York City's firearms licensing laws. Plaintiffs and their counsel will fairly and adequately protect the interests of the class and will vigorously prosecute this action on its behalf.

111. Rule 23(b)(2). Defendant has acted on grounds that apply generally to the class by maintaining and enforcing the Non-Resident Cap against all Non-Resident Carry licensees. Accordingly, final declaratory and injunctive relief is appropriate respecting

the class as a whole. Plaintiffs seek certification of the class under Rule 23(b)(2) for purposes of declaratory and injunctive relief only; the named Plaintiffs assert their claims for nominal damages solely in their individual capacities. A single declaration that the Non-Resident Cap is unconstitutional and a single injunction prohibiting its enforcement will provide relief to the class as a whole.

## CAUSES OF ACTION

### ONE
### 42 U.S.C. § 1983 - Second Amendment (U.S. Const. amends. II, XIV)

112. Plaintiffs repeat and reallege all prior allegations as though fully set forth herein.

113. The Second Amendment—as applied to the States and their subdivisions through the Fourteenth Amendment—protects "the right of the people to keep and bear Arms."

114. Plaintiffs and the members of the class are law-abiding citizens and are among "the people" whose rights the Second Amendment protects, notwithstanding that they reside outside New York State.

115. The Second Amendment protects the right to keep and bear "Arms"—stated in the plural. It guarantees the right to keep and bear more than one arm and does not reduce that right to keeping or bearing a single arm. A restriction that permits an individual to register and bear exactly one handgun therefore implicates the Second Amendment's textual protection of "Arms" in a way that a restriction permitting the keeping and bearing of multiple arms does not.

116. Plaintiffs seek to register more than one handgun so that they may choose among those handguns for lawful carry and self-defense based on their needs and circumstances. They do not seek to carry more than one handgun at a time, but rather to choose which of their registered handguns to carry at any given time. Each of those handguns is a bearable arm in common use for lawful purposes, including self-defense. The conduct Plaintiffs seek to engage in is therefore the keeping and bearing of multiple commonly used arms for self-defense, not the simultaneous carrying of multiple handguns.

117. The conduct in which Plaintiffs seek to engage therefore falls within the Second Amendment's plain text. Accordingly, the Constitution presumptively protects that conduct, and the burden falls upon the City to demonstrate that its restriction is consistent with this Nation's historical tradition of firearm regulation.

118. There is no historical tradition in this Nation of limiting law-abiding individuals to a single handgun that they may lawfully keep and bear, nor is there any historical tradition of imposing such a numerical limitation based upon an individual's State of residence. Historical regulations restricting the carrying of arms in particular places or circumstances do not establish a tradition of limiting a law-abiding individual to a single arm that he or she may lawfully keep and bear for self-defense.

119. The City cannot carry that burden.

120. The Non-Resident Cap prevents Plaintiffs and the class—each of whom the City has already licensed to carry a concealed handgun—from registering more than one handgun to their New York City licenses and, as a result, from lawfully carrying any other handgun they own in New York City. The Rule therefore limits Plaintiffs and the

class to exactly one handgun that they may lawfully bear in New York City and categorically forecloses them from keeping a second registered handgun available for lawful carry and self-defense. The Non-Resident Cap therefore infringes their right to keep and bear "Arms."

121. The ability to register and carry a single handgun does not cure that infringement. The Non-Resident Cap prevents Plaintiffs and the class from choosing among their lawfully owned handguns for self-defense as their needs and circumstances change. More fundamentally, when the single handgun registered to a Non-Resident Carry license becomes temporarily unavailable because it requires repair or servicing or becomes inoperable, the licensee has no other handgun that he or she may lawfully carry in New York City. The Rule therefore results, during such periods, in the complete deprivation of the licensee's ability to carry a handgun in New York City for self-defense.

122. Nor does the ability to substitute another handgun for the handgun registered to a Non-Resident Carry license cure the infringement. Substitution requires License Division review and, following approval, receipt of an updated license identifying the replacement handgun before the replacement may lawfully be carried in New York City. A Non-Resident Carry licensee whose single registered handgun becomes unavailable therefore cannot immediately switch to another lawfully owned handgun, but instead may remain unable to carry any handgun in New York City while the substitution process is completed.

123. The Non-Resident Cap is therefore materially different from a numerical limitation that still permits a law-abiding individual to keep and bear multiple handguns.

By limiting Plaintiffs and the class to exactly one registered handgun, the Rule both forecloses the exercise of the Second Amendment right as to every additional handgun and leaves the licensee with no alternative arm available for lawful carry when the single registered handgun becomes unavailable.

124. The Second Amendment violation does not depend upon the City's disparate treatment of resident and non-resident licensees. Even if the City imposed the same one-handgun restriction upon resident licensees, the restriction would still infringe Plaintiffs' and the class's Second Amendment rights because the Second Amendment does not limit its protection to a single arm.

125. The Non-Resident Cap constitutes an official written policy of the City and is the moving force behind the violation of Plaintiffs' and the class's Second Amendment rights.

**TWO**
**42 U.S.C. § 1983 - Privileges and Immunities Clause (U.S. Const. art. IV, § 2)**

126. Plaintiffs repeat and reallege all prior allegations as though fully set forth herein.

127. The Privileges and Immunities Clause of Article IV, § 2 provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," and it prevents a State from discriminating against the citizens of other States, in favor of its own citizens, with respect to rights that are fundamental to the Nation. The privilege at issue here is the fundamental right to keep and bear arms for lawful self-defense, including the right to carry a handgun for self-defense—not a right to a particular form of license or administrative benefit.

128. The right to armed self-defense is fundamental to the vitality of the Nation. It is an individual constitutional right expressly protected by the Second Amendment and, as applied to public carry, protects conduct that ordinary citizens may exercise for self-defense. The right to keep and bear arms for self-defense is therefore sufficiently fundamental to fall within the protection of the Privileges and Immunities Clause.

129. Article IV's protection is not limited to economic activities or privileges associated with pursuing a livelihood. The Clause protects privileges that are fundamental to national unity, and the exercise of an individual constitutional right by citizens traveling or present in another State falls within that protection.

130. The Non-Resident Cap discriminates against citizens of other States on its face. It permits New York State residents who hold Carry and Special Carry licenses to register two handguns as a matter of right, and any number of additional handguns upon a showing of safe storage, while it categorically forbids citizens of other States who hold Non-Resident Carry Licenses from registering more than one handgun solely because they reside in another State.

131. The discrimination is also evident in the City's application of the Rule to Mr. Hendrick. Although Mr. Hendrick works in New York City, the City issued him a Non-Resident Carry License and applied the Non-Resident Cap to him on the basis of his status as a non-New York State resident. Therefore, to the extent the City interprets its licensing scheme to classify an out-of-state resident who is principally employed within New York City as a Non-Resident Carry licensee, the resulting application of the Non-

Resident Cap likewise discriminates against citizens of other States in the exercise of the fundamental right to keep and bear arms.

132. On its face, the Rule singles out citizens residing outside New York State for less favorable treatment, permitting New York residents to register multiple handguns while categorically denying citizens of other States who were issued Non-Resident Carry Licenses the same ability, even when those citizens satisfy the same licensing, qualification, and safe-storage requirements. The distinction rests upon out-of-state residence and confers upon New York residents a privilege that the City withholds from otherwise similarly situated citizens of other States.

133. The Non-Resident Cap therefore burdens citizens of other States in the exercise of a fundamental right that the City affords more broadly to New York citizens.

134. No legitimate, non-protectionist justification supports that discrimination.

135. The City lacks a substantial reason for treating citizens of other States differently, and that differential treatment bears no substantial relationship to any legitimate problem the City seeks to address.

136. Plaintiffs and the class are not a peculiar source of any problem or concern associated with the registration of additional handguns. They have already been investigated and approved by the City to carry handguns within New York City, are subject to the same restriction against carrying more than one handgun at a time, and are equally capable of satisfying the City's safe-storage requirements for additional handguns.

137. Nor does the City's stated interest in preventing "forum shopping" provide a substantial reason for the Non-Resident Cap. As alleged above, that concern relates to

where an individual may initially apply for a New York handgun license. Once the City has accepted, investigated, and approved an individual for a Non-Resident Carry license, limiting that licensee to a single registered handgun does nothing to determine the proper licensing authority or prevent the licensee from selecting among licensing jurisdictions. The Non-Resident Cap therefore bears no substantial relationship to the City's asserted interest in preventing forum shopping.

138. By granting New York State residents the ability to register multiple handguns while categorically denying that privilege to otherwise qualified citizens of other States who hold Non-Resident Carry Licenses, without a substantial reason for the difference in treatment or a substantial relationship between that discrimination and any legitimate City objective, the City violates the Privileges and Immunities Clause of Article IV.

139. The Non-Resident Cap therefore deprives Plaintiffs and the class of their rights under the Privileges and Immunities Clause.

**THREE**
**42 U.S.C. § 1983 - Equal Protection (U.S. Const. amend. XIV)**

140. Plaintiffs repeat and reallege all prior allegations as though fully set forth herein.

141. The Equal Protection Clause of the Fourteenth Amendment prohibits States and municipalities from denying any person the equal protection of the laws and subjects classifications that burden the exercise of a fundamental right to heightened scrutiny.

142. The Non-Resident Cap expressly treats Non-Resident Carry licensees differently from other New York City carry licensees. It burdens Plaintiffs' and the class's exercise of the fundamental right to keep and bear arms by limiting them to a single registered handgun, while permitting Carry and Special Carry licensees to register multiple handguns.

143. The City has applied that classification to Mr. Hendrick notwithstanding that he works in New York City. To the extent the City interprets its licensing scheme to classify out-of-state residents who are principally employed within New York City as Non-Resident Carry licensees, those individuals are likewise subjected to the one-handgun limitation while similarly situated Carry licensees are permitted to register multiple handguns.

144. Plaintiffs and the class are similarly situated to Carry and Special Carry licensees in every material respect relevant to the challenged restriction: they have been vetted and licensed by New York City, may carry only one handgun at a time, and are equally capable of satisfying the City's safe-storage requirements. Yet Plaintiffs and the class are subjected to a stricter numerical limit on the handguns they may register and carry.

145. Because the classification treats similarly situated individuals differently in the exercise of a fundamental right, it is subject to heightened scrutiny, which the City cannot satisfy.

146. The classification is not narrowly tailored to serve any compelling governmental interest and is not substantially related to any important governmental interest.

147. The classification fails even rational-basis review. Non-Resident Carry licensees and Carry and Special Carry licensees are similarly situated with respect to the considerations relevant to the registration of additional handguns: they have been vetted and licensed by the City, may carry only one handgun at a time, and are equally capable of satisfying the City's safe-storage requirements. Their classification as Non-Resident Carry licensees bears no rational relationship to any of those considerations, and no legitimate governmental interest is rationally served by permitting Carry and Special Carry licensees, but not similarly situated Non-Resident Carry licensees, to register more than one handgun.

148. The Non-Resident Cap therefore deprives Plaintiffs and the class of the equal protection of the laws.

**WHEREFORE,** Plaintiffs request the following relief against the City:

1. A declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that 38 RCNY § 5-25(g)(3)(a) is unconstitutional under the Second Amendment, the Privileges and Immunities Clause of Article IV, and the Equal Protection Clause of the Fourteenth Amendment;
2. A declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that, to the extent Defendant applies 38 RCNY § 5-25(g)(3)(a) to out-of-state residents who are principally employed within New York City, such application violates the Privileges and Immunities Clause of Article IV and the Equal Protection Clause of the Fourteenth Amendment;
3. A permanent injunction restraining Defendant, and its officers, agents, and employees, from enforcing 38 RCNY § 5-25(g)(3)(a), and requiring

Defendant to permit Plaintiffs, and the class, to acquire and register additional handguns on the same terms available to New York State residents who hold Carry or Special Carry licenses;

4. A trial by jury on all triable issues;
5. An award of nominal damages to the named Plaintiffs;
6. Disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988;
7. Granting Plaintiffs leave to amend the Complaint should the Court determine that any claim has been insufficiently pleaded; and
8. Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
September 11, 2026

Respectfully submitted,

The Law Office of Mirel Fisch
*Attorneys for Plaintiffs*
2329 Nostrand Ave, Suite 100
Brooklyn, New York 11210
mirel@mfischlaw.com
(929) 382-4933

By: ______________________
Mirel Fisch