MF

The Law Office of Mirel Fisch
2329 Nostrand Ave, Suite 100 • Brooklyn, NY 11210
Phone: (929) 382-4933 • Email: mirel@mfischlaw.com

November 12, 2026

Hon. Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Hendrick, et al. v. New York City**
**1:26-cv-7956 (ER)**

Dear Judge Ramos:

I represent the Plaintiffs in the above-referenced matter. I am writing in response to Defendant New York City's (the "City") letter, DE 9, requesting a pre-motion conference in anticipation of its Rule 12(b)(6) motion. For the reasons stated below, the motion would fail.

This action challenges 38 RCNY § 5-25(g)(3)(a) (the "Non-Resident Cap"), which treats individuals the City has already licensed to carry differently based solely on their State of residence. New York residents who hold Carry or Special Carry licenses may register two handguns as of right, and any number of additional handguns upon a showing of safe storage. Non-residents, however, are limited to a single handgun, and their "requests to add more than one (1) handgun to a license shall not be approved." Compl. ¶¶ 35, 37–40.

**The Non-Resident Cap Implicates the Plain Text of the Second Amendment**

Plaintiffs' first claim alleges that the Non-Resident Cap violates the Second Amendment in two ways. First, by limiting Plaintiffs to a single handgun, it restricts their right to "bear Arms," which the Amendment's text itself states in the plural. U.S. Const. amend. II; Compl. ¶¶ 20, 115, 120. Second, when that single handgun is being repaired or is otherwise unavailable, Plaintiffs cannot lawfully carry any handgun in the City at all. Compl. ¶¶ 43, 101–02, 121.

Disregarding the Second Amendment's plain text, the City focuses solely on the second infringement. The City does not—and cannot—dispute that its process for changing the handgun registered to a license "is not immediate." DE 9 at 2. Instead, it argues that the claim fails at the first step of the *Bruen* analysis because the Non-Resident Cap "does not limit Plaintiffs' ability to carry a firearm for self-defense," so "the Second Amendment is not implicated." *Id.*

The City's step-one argument rests almost exclusively on a decision that the Second Circuit vacated, as to this very issue, two days ago. *See Mills v. N.Y.C.*, --- F.4th ----, 2026 WL 3398887, at *1 (2d Cir. Nov. 10, 2026) (vacating judgment dismissing claims "at the first step of the *Bruen* analysis"), *vacating in part* 758 F. Supp. 3d 250 (S.D.N.Y. 2024). In doing so, the Second Circuit clarified that step one asks only whether the challenged rule applies to "the people," concerns "any weapon customarily used for offensive or defensive purposes," and places "any restrictions" on keeping or bearing them. *Id.* at *6 (quoting *Wolford v. Lopez*, 609

U.S. 185, 195 (2026)). Where a rule regulates the actual keeping or bearing of arms, as opposed to ancillary conduct, "step one is satisfied without regard to the degree of constraint." *Id.* at *7. Therefore, to survive dismissal at step one, a plaintiff is required "plausibly to allege only that the challenged rules effected any restriction" on such conduct. *Id.* at *11.

The Second Circuit grounded its step-one analysis in the very text Plaintiffs rely upon. *See* Compl. ¶¶ 20, 115. It explained that the Supreme Court "has not construed the plural word 'Arms' to safeguard an individual right to possess or carry only a single such weapon," and that "[j]ust as the plain language of the Second Amendment affords a right to 'keep . . . Arms' in the plural, so it affords a right to 'bear Arms' in the plural." *Mills*, 2026 WL 3398887, at *12 (citing *Heller v. District of Columbia*, 801 F.3d 264, 280 (D.C. Cir. 2015) (recognizing the "undoubted constitutional right to keep arms (plural)"), and *Nguyen v. Bonta*, 140 F.4th 1237, 1242 (9th Cir. 2025)). Therefore, contrary to the City's claim, which quotes the vacated decision, Plaintiffs' reliance on the text is not "far too facile." DE 9 at 2. The Non-Resident Cap restricts the very thing the Amendment's text protects: "Arms," in the plural.

Next, the City concedes that, under the Non-Resident Cap, "Plaintiffs are . . . temporarily unable to carry a firearm in the City" when their registered handgun is unavailable, but relies on the district court's holding in *Mills* that a regulation fails at step one if it does not "permanently deprive applicants of their right to own and carry firearms." *Id.* (quoting *Mills*, 758 F. Supp. 3d at 264). The Second Circuit rejected that very premise, holding that "nothing in the text draws a temporary/permanent distinction with respect to the right to keep and bear arms." *Mills*, 2026 WL 3398887, at *8. Accordingly, it "reject[ed] any suggestion that only permanent or complete deprivations of the right to keep and bear arms implicate conduct covered by the Second Amendment." *Id.* at *9. By the City's own admission, the Non-Resident Cap leaves Plaintiffs temporarily unable to carry *any* handgun in the City. Under *Mills*, that satisfies step one.

**The Non-Resident Cap Violates the Privileges and Immunities Clause**

As to Plaintiffs' second claim, the City argues that the Non-Resident Cap does not implicate a fundamental right, and that even if it does, "there are perfectly valid independent reasons" for treating out-of-state residents differently. DE 9 at 3.

The City's argument that the Non-Resident Cap does not implicate a fundamental right depends entirely on its claim that the Second Amendment is not implicated. *See id.* As shown above, it is. Indeed, "the right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010); *see also Bach v. Pataki*, 408 F.3d 75, 91 (2d Cir. 2005) ("assum[ing], without deciding, that entitlement to a New York carry license is a privilege under Article IV"), *overruled on other grounds by McDonald*, 561 U.S. 742.

The City's "even if" justification is absurd. The City claims a "substantial interest in ensuring that it can properly steward each firearm listed on a City license," which includes "ensuring that any listed handgun is being safely stored." DE 9 at 3. Because the License Division "does not have jurisdiction over handguns being stored out of state," the City asserts that it "can only ensure that non-residents are properly safeguarding one handgun at a time, i.e.,

carrying it on their person." *Id.* But carrying a handgun is not storing it. When Plaintiffs carry in the City, they are bound by the City's carry rules. Compl. ¶ 45. When they are not carrying in the City, which is the vast majority of the time, the one handgun the City *does* register sits in their homes outside New York, beyond the License Division's reach, exactly like the handguns the City refuses to register. *Id.* ¶¶ 64, 71, 79, 85. Taken at its word, the City's rationale would bar non-residents from registering any handgun at all, and therefore from carrying in the City at all.

Moreover, the City's claimed "substantial interest" is pure pretext. The Non-Resident Cap does not prevent any non-resident from owning or storing any number of additional handguns, and the City has no power to limit how many handguns non-residents may lawfully keep in their home States. Plaintiffs each own between three and approximately twenty-five handguns, *id.* ¶¶ 58, 70, 78, 87, 94, and they store every one of them in accordance with the laws of their home States, whether or not the City registers them. The City has no interest, legitimate or otherwise, in how citizens of other States store lawfully owned property in their home States. The City's refusal to register Plaintiffs' handguns accomplishes only one thing: it prevents Plaintiffs from carrying them in the City. Registering an additional handgun would change only which handgun a licensee may carry in the City, giving non-residents the same flexibility New York residents already have. *Id.* ¶¶ 37, 102.

Even accepting the City's claimed interest, the City permits resident licensees to register additional handguns upon a showing of "appropriate safeguarding." 38 RCNY § 5-25(g)(1), (3); Compl. ¶¶ 37, 44. Yet the City categorically denies non-residents the opportunity to make any such showing. Compl. ¶¶ 40, 44. Where a less restrictive alternative already exists in the City's own rules, an absolute bar cannot bear "a sufficiently close relation" to any substantial reason. *Schoenefeld v. Schneiderman*, 821 F.3d 273, 279 (2d Cir. 2016); *see Supreme Ct. of N.H. v. Piper*, 470 U.S. 274, 284 (1985) (considering "the availability of less restrictive means").

**The Non-Resident Cap Violates the Equal Protection Clause**

The City's Equal Protection argument simply repackages its other arguments and fails for the same reasons. *See* DE 9 at 3. Because the Non-Resident Cap burdens a Second Amendment right, heightened scrutiny applies, not the rational-basis review the City urges. *Id.* Regardless, the Non-Resident Cap would fail even rational-basis review. Plaintiffs are similarly situated to resident licensees in every material respect: they were investigated and licensed by the City and are equally capable of safely storing their handguns. Compl. ¶¶ 49, 144. That their home States have "different safeguarding laws," DE 9 at 3, is immaterial, because the one handgun the City does register to a non-resident is stored under those same laws. A storage justification that applies equally to the handgun the City registers cannot rationally explain the handguns it refuses to register. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446–50 (1985).

For these reasons, the City's anticipated motion would be futile.

Respectfully,

Mirel Fisch

CC: Counsel for Defendant via ECF